IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |  |
|---|---|---|
| **Malcolm Muhammad,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20cv279 (LO/IDD) |
| | ) | |
| **I.T. Gilmore, et al.,** | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

In this civil-rights suit, see 42 U.S.C. § 1983, plaintiff Malcolm Muhammad claims that while he was incarcerated at Sussex I State Prison (SISP), Unit Manager Jessica Adams, Medical Administrator Crystal Allen, and nurse O'Donald acted with deliberate indifference to his serious medical need, and that Grievance Coordinator E. Witt committed unlawful First Amendment retaliation, when they interfered with Muhammad's ability to obtain special-sized shoes. Defendants Adams and Witt move for summary judgment.[1] [Dkt. No. 31]. Muhammad, who is proceeding pro se, has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he opposes the motion. [Dkt. Nos. 33, 39, 40]. Because the undisputed evidence demonstrates that defendants Adams and Witt are entitled to judgment as a matter of law, the Court will grant their motion for summary judgment.

I. Background

*A) The Amended Complaint*

In the amended complaint Muhammad principally alleges that prison doctors have authorized him to obtain shoes in width size EEE with arch support, but the prison's commissary

---

[1] Allen has answered the complaint but has not filed dispositive briefing. O'Donald has yet to appear.

"does not sell or provide" shoes in that size. [Dkt. No. 7, Amended Compl. ¶¶ 2–3]. He brings four claims based on his alleged inability to obtain EEE-sized shoes while incarcerated at SISP. First, Muhammad claims that Adams, Muhammad's Unit Manager, interfered with his ability to order the EEE-sized shoes from an outside vendor. Second, Muhammad claims that Crystal Allen, SISP's Medical Administrator, delayed his ability to order the shoes by failing to timely provide the shoe profile. Third, Muhammad claims that O'Donald, a nurse, delayed scheduling him to see a provider when he sought treatment for his feet, which were allegedly injured from not wearing correct-sized shoes. And fourth, Muhammad claims that Witt retaliated against him for filing grievances by responding to those grievances in a manner that delayed Muhammad's receipt of his special-sized shoes. Only claims one and four, those against Adams and Witt, are relevant to the motion for summary judgment before the Court, and the remaining claims will not be discussed here.

*B) The Summary Judgment Record*

In support of and in opposition to summary judgment, the parties have submitted evidence, including affidavits, applicable Virginia Department of Corrections (VDOC) operating procedures, and Muhammad's relevant VDOC medical and grievance records. The following facts are undisputed, except where noted otherwise.

In October 2019, Muhammad sought to purchase new shoes in size EEE width, and he was told he needed a new doctor-issued shoe profile, even though the profile was supposed to be listed in his file as permanent. [Muhammad Aff. ¶¶ 3–5 & Ex. A1]. Dr. Henning at SISP provided a new, permanent shoe profile for Muhammad on October 28, 2019. [Muhammad Ex. A8, A16]. Muhammad attests that he was unable to obtain a copy of the shoe profile until mid-January 2020, and he points to medical and grievance records purporting to document the

delay. [Muhammad Aff. ¶ 20; Muhammad Ex. B5]. One medical record shows that Dr. Henning ordered the shoe profile on October 28, 2019, and another shows a shoe-profile order with a "start date" of October 28, 2019, but the form was not signed by a nurse until December 10, 2019. [Muhammad Ex. A8, A16]. Additionally, when Muhammad submitted to Ms. Workman, identified by Muhammad as the medical administrator, a request for a physical copy of the shoe profile on December 11, 2019, she replied on December 19 that she could not find a shoe profile in Muhammad's "chart." [Muhammad Ex. B4]. Muhammad submitted a similar request on January 9, 2020, and in Workman's response the following day, she wrote, "Here is your shoe profile copy." [Muhammad Ex. B5].

Adams attests by affidavit that she received a request from Muhammad in November or December 2019, asking her to authorize the withdrawal of funds from his offender trust account so that he could purchase shoes from an East Bay catalog. [Adams Aff. ¶ 4]. Because VDOC operating procedures require the medical department to be consulted before a special order is approved for property to accommodate offender medical needs, Adams next contacted Allen, identified by Adams as SISP's medical administrator. [Adams Aff. ¶ 5–6 & Enclosure A, VDOC Operating Procedure (OP) § 801.6(IV)(D)(5)(c)]. Allen informed Adams that the commissary vendor (Keefe) did not stock size EEE width, but it could special order them. [Adams Aff. ¶ 5]. Adams adds that Allen told her that Muhammad's size-EEE shoes were not medically necessary, and, if they were, the medical department would have procured them on Muhammad's behalf. [Id.]. As a result of this conversation, Adams avers, she denied Muhammad's request and told him to order the EEE-width shoes from commissary. [Id. ¶ 7].

Muhammad disputes some of Adams's testimony. Muhammad avers, for instance, that he did not seek to buy shoes from an East Bay catalog. [Muhammad Aff. ¶ 8]. Rather, Muhammad

3

attests that he requested to buy shoes from Union Supply Direct, the same company he had ordered from for over a decade. [Id. ¶¶ 8, 10]. Muhammad does not directly dispute that Keefe could special order his shoes, averring, instead, that "commissary did not stock them, and the only way that [he] could get them is from an outside vendor." [Id. ¶ 12]. He does not attest that he ever asked commissary to place the special order and that Keefe was unable to fulfill the request. He also insists that the shoes were medically necessary because they had been "approved by . . . several doctors." [Id. ¶ 9].

Defendant E. Witt was the grievance coordinator at SISP while Muhammad was housed there, and she attests to the role she played in handling Muhammad's shoe-related grievances. According to Witt, the grievance coordinator intakes grievances and ensures that they are appropriate and ready for a Level I response from the warden. [Witt Aff. ¶ 9]. Witt avers that she "was not involved in approving or disapproving Muhammad's request to order shoes" and had "no role in issuing shoe profiles or ordering offender property." [Id. ¶¶ 9–10].

The parties have submitted three sets of grievance-records: (1) Grievance number SX1-19-REG-00104 (the "104-grievance record"), in which Muhammad seeks a physical copy of his shoe profile; (2) Grievance number SXI-20-REG-00014 (the "014-grievance record"), related to Muhammad's complaints about Officer Adams refusing to authorize his request to purchase shoes from an outside vendor; and (3) grievances in which Muhammad sought medical treatment for foot pain. [Witt Aff. Enclosure A].

For the 104-grievance record, Muhammad submitted an informal complaint on November 4, 2019, to report that even though Dr. Henning had renewed his shoe profile for EEE-width shoes, at medical he "was told that Ms. Allen said, 'I cannot get a shoe profile.'" [Id., the 104-grievance record]. The November 9 response from the Director of Nursing, J. Smith, just

4

reiterated that the shoe profile had been "written" on October 28, 2019. [Id.]. Muhammad then filed a regular grievance on November 4, faulting defendant Allen for his inability to "receive [his] shoe profile." [Id.]. In the Level I response dated December 16, 2019, Warden Hamilton determined that the grievance was unfounded. [Id.]. Hamilton relayed that his investigation had found that the shoe profile was renewed on October 28, 2019, and that there was no evidence that Allen denied him the shoe profile. [Id.]. Hamilton further admonished Muhammad that "[t]he shoes can be ordered through the Property Department at your own expense" because "[b]ased on your medical record, the need for EEE wide shoes is not due to a medical deformity or injuries, so the shoes will not be ordered and provided by medical." [Id.]. The Level II response concurred that the grievance was unfounded. [Id.].

The 014-grievance record begins with an informal complaint Muhammad wrote on December 22, 2019, complaining that Adams refused to authorize his request to purchase shoes from an outside vendor. [Witt Aff. Enclosure A, the 014-grievance record]. In her response Adams explained that Muhammad's request was denied because "[t]he institution can order your shoe size." [Id.]. Witt received a regular grievance from Muhammad on January 23, 2020, in which he reported that he had been without shoes since September 2019, and that Adams had refused to authorize his request to order shoes from an outside vendor even though Warden Hamilton and Dr. Henning had approved the request. [Witt Aff. ¶ 6; Muhammad Ex. C2, the 014-grievance record]. Witt returned the grievance on the ground that it lacked sufficient information and asked Muhammad to attach the shoe profile provided by medical. [Witt Aff. ¶ 6; Muhammad Ex. C2, the 014-grievance record].[2] Muhammad resubmitted the grievance,

---

[2] Muhammad submitted another regular grievance on January 7, 2020, which similarly complained that Adams would not authorize the money withdrawal to order shoes from an outside vendor. [Muhammad Ex. C10]. During intake Witt rejected the grievance as repetitive. [Id.].

5

explained that he had not received a copy of the shoe profile, and asked Witt to investigate whether the doctor had issued a shoe profile for him on October 28, 2019. [Witt Aff. ¶ 7 & Enclosure A, the 014-grievance record]. Witt accepted this revised grievance for intake. [Witt Aff. ¶ 7]. SISP by then had a new warden, I.T. Gilmore, who provided the Level I response on February 24, 2020. [Id. & Enclosure A, the 014-grievance record]. Gilmore found the grievance unfounded because the institution, rather than an outside vendor, could order the shoes in his requested size. [Witt Enclosure A, the 014-grievance record]. The Level II response from the regional administrator, Marcus Elam, dated March 20, 2020, deemed the grievance founded. [Id.]. "Warden Hamilton[] and Dr. Henning approved [Muhammad's] specific show size EEE for [Muhammad] to order through the vendor **Keefe**. However," Elam continued, "the inappropriateness of staff caused a delay in addressing your concerns." [Id. (emphasis added)].

The third set of grievance records begins with a regular grievance Muhammad submitted on February 6, 2020, in which he requests to see the prison doctor for foot pain and reports that, although he keeps being told that he is scheduled to see the doctor, he still has not seen a doctor. [Witt Aff. ¶ 8 & Enclosure A]. Witt reviewed the submission during intake and concluded that it was a request for services. [Witt Aff. ¶ 8 & Enclosure A]. Thus, she rejected the grievance and advised Muhammad to submit a request for medical services. [Witt Aff. ¶ 8 & Enclosure A]. Muhammad appealed Witt's intake decision. [Witt Aff. ¶ 8; Muhammad Ex. F1]. The Regional Ombudsman upheld the intake decision on March 5, 2020 and advised Witt to submit a request for medical services at his new institution of confinement, Keen Mountain Correctional Center (KMCC), where he had been transferred on February 21, 2020. [Witt Aff. ¶ 8; Muhammad Ex. A17, F1].

Muhammad continued his quest to purchase size-EEE shoes from an outside vendor at KMCC. A KMCC medical record dated March 26, 2020, states that Muhammad reported foot pain because of having shoes in the wrong width size and that he was awaiting a catalog to order proper shoes. [Muhammad Ex. A20]. In September of that year, Muhammad placed a special order with the commissary to purchase New Balance shoes in size 2E (not EEE) width from Union Supply Direct. [Id., at A18–A19].

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary judgment motion, the Court views the evidence, and draws all inferences, in the light most favorable to the nonmoving party, here, Muhammad. See E.W. by T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

## III. Analysis

### A) Deliberate-Indifferent Claim against Officer Adams

Adams argues that the undisputed facts prove that she did not violate Muhammad's Eighth Amendment rights by interfering with his ability to receive medical care at SISP. A prison official violates the Eighth Amendment by acting with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A viable claim demonstrates that (1) the inmate has a serious medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize

7

the necessity for a doctor's attention," and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." Gordon v. Schilling, 937 F.3d 348, 356–57 (4th Cir. 2019) (internal quotation marks, citations, and brackets omitted).

Adams contends that the undisputed record does not establish that Muhammad's foot condition was serious, and, therefore, Muhammad cannot meet the objective component of a deliberate-indifference claim. Adams urges, for instance, that there is no evidence that a doctor diagnosed Muhammad with a foot condition, and that Muhammad's sole averment that he was in pain does not provide sufficient evidence that he had a medical condition that obviously needed a doctor's attention. Muhammad argues that a fact dispute precludes summary judgment. In particular, he contends that because Dr. Henning had ordered the EEE-wide shoe profile, that means Muhammad had an objectively serious medical condition.

The Court need not address whether Muhammad suffered from an objectively serious medical condition because the Court agrees with Adams's second argument that, even if the objective component could be satisfied, the undisputed record establishes that she did not act with deliberate indifference. When a claim is brought against a prison official who is not a medical professional, the evidence must demonstrate that the official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once prescribed." Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir. 2009) (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). Here, the record establishes that Adams did not deny or delay Muhammad's ability to obtain EEE-wide shoes; rather, she only directed him to order the shoes through the prison's vendor, Keefe.

Muhammad urges that disputes of fact nevertheless render summary judgment inappropriate, but none of his arguments are relevant or supported by the record. First, he argues that he did not seek to order shoes from an East Bay catalog, as Adams says in her affidavit; rather, he sought to order from Union Supply Direct, as he had done in the past. But this fact dispute is not material. Regardless of what outside vendor Muhammad sought to purchase shoes from, whether Union Supply Direct or East Bay, neither is Keefe—the VDOC's commissary vendor. Muhammad does not directly dispute that Keefe could have special ordered the shoes for him. He says only that the "commissary did not stock them," and it is undisputed that Keefe did not have them in stock and would have to special order them. [Muhammad Aff. ¶ 12]. Moreover, Muhammad has not attested that he ever tried to place a special order with Keefe, but the vendor was unable to fulfill the special request. As the Court already observed, the record supports only that, although Adams declined to allow Muhammad to obtain shoes from his desired vendor, she gave him explicit instructions for how to otherwise obtain EEE-sized shoes from commissary. Muhammad's own failure to heed Adam's directions cannot be used to impose constitutional liability on her. Instead, once Muhammad had the shoe profile in hand, the ordering delay is most attributable to Muhammad himself, and not to Adams, who was merely following VDOC protocol in directing Muhammad to place a special order with VDOC's commissary vendor instead of an outside vendor.

Muhammad next insists that Warden Hamilton approved Muhammad's request to place a special order from Union Supply Direct, and this disputed fact would allow a juror to infer that Adams, by refusing to authorize the purchase, interfered with Muhammad's ability to obtain necessary medical care. [Muhammad Aff. ¶ 18]. But this testimony from Muhammad's affidavit is inadmissible hearsay, which cannot be used to create a fact dispute at summary judgment.

See Stanton v. Elliott, No. 21-1197, —F. 4th—, 2022 WL 288012, at *7 n.7 (4th Cir. Feb. 1, 2022) (citing Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991)); Fed. R. Evid. 801(c) (defining hearsay as a statement that "the declarant does not make while testifying" and is "offer[ed] in evidence to prove the truth of the matter asserted in the statement"). What's more, the grievance record—which Muhammad does not dispute—reveals that Hamilton only approved Muhammad to purchase from VDOC's vendor, Keefe. Even in the grievance deemed founded, the regional administrator observed that Warden Hamilton and Dr. Henning had approved Muhammad to order the special shoes from *Keefe*, but that the "inappropriateness" of unnamed staff "caused a delay." [Muhammad Ex. C8]. The regional administrator did not conclude that Hamilton—or anyone at SISP—authorized, or should have authorized, Muhammad to order the shoes from an outside vendor. Thus, summary judgment in Adams's favor is warranted.

### B) Retaliation Claim against E. Witt

Defendant E. Witt, the grievance coordinator at SISP while Muhammad was housed there, argues that the undisputed facts do not demonstrate that she retaliated against Muhammad for filing grievances. To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020).

The parties agree that Muhammad engaged in protected First Amendment activity by filing grievances. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 545 (4th Cir. 2017). Witt argues, however, that the undisputed record reveals that she did not take any action that

10

adversely affected Muhammad's First Amendment rights. Conversely, Muhammad contends that the manner in which Witt responded to his grievances delayed his ability to receive prompt medical care for his foot. The Court will assume for the sake of argument that medical-care delays caused by grievance responses is an adverse action that would adversely affect an inmate's First Amendment rights. Still, because the undisputed evidence does not show that Witt had any retaliatory animus, she is entitled to judgment as a matter of law.

Muhammad's retaliation claim is based on a so-called "unitary event," in which the alleged adverse action is "wholly bound up in a plaintiff's protected conduct." Martin, 977 F.3d at 302–04. Here, Muhammad filed grievances about his inability to obtain proper shoes and medical treatment for his feet, and Muhammad urges that Witt responded to those grievances in a manner that delayed his ability to obtain the shoes and medical care. Thus, Witt's actions—responding to the grievances—cannot be separated from the protected conduct—filing grievances. This posture "require[s] focusing precisely on whether the defendant acted for an impermissible reason, and not merely in response to the plaintiff's conduct." Id. at 303 (quoting Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Washington Indus. Dev. Agency, 77 F.3d 26, 33 (2d Cir. 1996)). In other words, the Court asks "whether defendant would have reached the same decision absent a retaliatory motive." Id. at 303–04.

The record is devoid of any evidence that Witt responded to Muhammad's grievances for an impermissible reason. Muhammad principally points to Witt's intake decision for the February 6, 2020 grievance he filed requesting to see the prison doctor. Witt did not accept that grievance after concluding that it was a request for services; instead, she advised Muhammad to "send a request form to check your schedule to see the Doctor. (You were not denied)." [Witt Aff. Enclosure A]. Muhammad insists that, had Witt accepted the grievance during intake, "it's

possible that the warden would have made a decision for plaintiff to see the doctor." [Pl. Opp'n to Summ. J., at p. 18]. That is entirely possible, but irrelevant. It does not show that Witt had a retaliatory motive and that, without one, she would have accepted the grievance. Moreover, the regional ombudsman upheld this intake decision, lending additional credence to the conclusion that Witt's intake decision was sound. Witt therefore is entitled to summary judgment on the retaliation claim against her.

## IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendants' motion for summary judgment [Doc. No. 31] will be granted.

Entered this 3rd day of March 2022.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge